[Cite as *State v. Clay*, 2018-Ohio-985.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 17 MA 0113 |
| VS. | ) | |
| | ) | OPINION |
| JONATHAN L. CLAY | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from the Court of Common Pleas, of Mahoning County, Ohio
Case No. 07 CR 965

JUDGMENT:    Affirmed.

APPEARANCES:
For Plaintiff-Appellee    Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant    Jonathan L. Clay, Pro se
Inmate No. 542-025
Mansfield Correction Institution
P.O. Box 788
Mansfield, Ohio 44901

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: March 13, 2018

ROBB, P. J.

**{¶1}** Defendant-Appellant Jonathan L. Clay appeals the decision of the Mahoning County Common Pleas Court denying his petition for postconviction relief. He filed the petition nine years after the trial transcripts were filed in the direct appeal of his aggravated murder conviction. Appellant argues the trial court failed to hold an evidentiary hearing and denied his petition without declaring it untimely or issuing findings of fact and conclusions of law. He claims he was not advised by his attorney about postconviction relief or any deadlines. He also contends he could not file a timely petition because he was unaware of a third plea offer, which he believes the state offered to his trial counsel. Alternatively, he argues the trial court lacked subject matter jurisdiction due to the state's correction of a police report upon which the complaint was based. Lastly, he makes an argument about voir dire. For the following reasons, the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

**{¶2}** Appellant was indicted for aggravated murder for purposely causing the death of Terrence Brown with prior calculation and design, with a firearm specification for discharging a firearm from a motor vehicle. *See* R.C. 2903.01(A); R.C. 2941.146(A). His cousin, Jason Clay, was jointly indicted, but the cases were later severed. Appellant's case was tried to a jury in December 2007. The testimony established Jason was driving a white sport utility vehicle down Woodcrest Avenue in Youngstown with Appellant as the front seat passenger and two others as back seat passengers. The back seat passengers testified a man named Chuck shot at their vehicle on Woodcrest, and they proceeded to a turnaround where they briefly parked (near a van containing four female witnesses). Outrage was expressed about the gunshots, and a large gun was prepared before the SUV traveled back past the location of the shooter.

**{¶3}** The passenger sitting behind Appellant testified he saw Appellant shoot the victim (who was not Chuck) and he heard Appellant say the victim should have stayed in his house. The passenger behind the driver said he was ducking and did not see who fired, but he heard gunfire from within the SUV. Appellant's position in

the vehicle was confirmed by the back seat passengers and by two females who encountered the SUV just before the fatal shooting (one of whom saw Appellant holding a big gun). A third female saw a large gun protruding from the front passenger window of the SUV.

**{¶4}** The jury found Appellant guilty as charged. The court sentenced him to thirty years to life for aggravated murder consecutive to five years for the firearm specification. Appellant filed a timely notice of appeal from the December 20, 2007 sentencing entry. New counsel was appointed for the appeal. Sixteen assignments of error were presented on appeal, dealing with speedy trial, impeachment, photographs, discovery, sufficiency and weight of the evidence, exculpatory evidence, prosecutorial misconduct, ineffective assistance of counsel, jury instructions, sentencing, and cumulative error. This court overruled Appellant's assignments of error and affirmed the trial court's judgment. *State v. Clay*, 7th Dist. No. 08 MA 2, 2009-Ohio-1204.

**{¶5}** On June 2, 2017, Appellant filed a petition for postconviction relief setting forth various contentions, including the following arguments reiterated on appeal: failure of counsel to advise on postconviction relief; failure of counsel to convey a third plea offer; corrected police report affected subject matter jurisdiction; and failure to challenge a biased juror during voir dire. On June 9, 2017, the trial court denied the petition. Appellant filed a timely notice of appeal. Appellant's pro se brief sets forth four assignments of error, which we have divided into subject areas.

JUDGMENT ENTRY & UNTIMELY PETITION

**{¶6}** Appellant addresses multiple topics under his first assignment of error, which provides in pertinent part:

"This Trial Court Denied the Petition without declaring it to be Untimely, nor making any findings of facts and conclusions of law, nor did the trial court hold a[n] Evidentiary Hearing on the Affidavits w[h]ere the State Prosecutor's Office never answered or Responded to the petition, nor sought out any Summary Judgement proceedings Pursuant to the Ohio Revised Code 2953.21-23."

**{¶7}** As provided in R.C. 2953.21(A)(1), a convicted defendant who claims there was such an infringement of his rights as to render the judgment void or voidable under the Ohio or the United States Constitutions may file a petition for postconviction relief in the court that imposed sentence. There are time deadlines for filing this petition. Under the prior version of the statute, a petition had to be filed no later than 180 days after the date the trial transcripts were filed in the court of appeals in the direct appeal. *See* Former R.C. 2953.21(A)(2) (unless no direct appeal was filed, in which case the 180 days started from day the time expired for filing the appeal). Effective March 23, 2015, the number of days changed from 180 to 365. R.C. 2953.21(A)(2). As the state points out, the transcripts were filed in Appellant's direct appeal on June 3, 2008. Appellant filed his petition for postconviction relief on June 2, 2017, nine years after the transcripts were filed in the direct appeal.

**{¶8}** There is an exception to these time deadlines provided in R.C. 2953.23. *See* R.C. 2953.21(A)(2) (prefacing the deadlines with: "Except as otherwise provided in section 2953.23 of the Revised Code * * *"). Pertinent to this case, R.C 2953.23(A)(1) states a court may not entertain an untimely petition unless: (a) the petitioner shows (i) he was unavoidably prevented from discovering the facts upon which he must rely to present the claim for relief or (ii) after the time expired, the United States Supreme Court recognized a new federal or state right that applies retroactively and the petition asserts a claim based on that right; and (b) the petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found him guilty of the offense.[1]

**{¶9}** Initially, Appellant complains the trial court denied the petition without declaring it untimely or issuing findings of fact and conclusions of law. Findings of fact and conclusions of law are required by R.C. 2953.21(D) and (H) when a court dismisses a timely petition or denies it after a hearing. However, "a trial court need not issue findings of fact and conclusions of law when it dismisses an untimely [post-

---

[1] Division (A)(1)(b) of R.C. 2953.23 also provides a method for challenging a constitutional error at death sentencing. Division (A)(2) applies to an offender for whom DNA testing was performed.

conviction relief] petition. * * * This rule applies even when the defendant, as here, claims, under R.C. 2953.23, that he was unavoidably prevented from discovery of the facts to present his claim for post-conviction relief." *State ex rel. Hach v. Summit Cty. Ct. of Common Pleas*, 102 Ohio St.3d 75, 2004-Ohio-1800, 806 N.E.2d 554, ¶ 9, citing *State ex rel. Reynolds v. Basinger*, 99 Ohio St.3d 303, 2003-Ohio-3631, 791 N.E.2d 459, ¶ 7, and *State ex rel. Kimbrough v. Greene*, 98 Ohio St.3d 116, 2002-Ohio-7042, 781 N.E.2d 155, ¶ 6.[2]  The fact the trial court merely stated the petition was "denied" and did not specify that it was an untimely filed petition does not affect our review or provide Appellant with grounds for appeal.  Any argument suggesting findings of fact and conclusions of law were required in this case is overruled.

{¶10} Appellant also complains the trial court "sua sponte" denied the petition without an answer or motion for summary judgment from the state.  Although R.C. 2953.21(E) provides deadlines for any answer or summary judgment motion the state decides to file, the state has no obligation to respond to the petition for postconviction relief.  *See State ex rel. Manning v. Montgomery*, 39 Ohio St.3d 140, 529 N.E.2d 935 (1988) (denying request for a writ against prosecutor as the defendant could ask the trial court to rule on his petition without the prosecuting attorney's response). Moreover, a hearing is not automatic. *State v. Calhoun*, 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999).  Even when a timely petition is filed, a hearing cannot be granted where the petition fails to allege substantive grounds for relief as the petitioner bears the burden of submitting evidentiary documents containing sufficient operative facts to show his claim.  *See State v. Jackson*, 64 Ohio St.2d 107, 110-111, 413 N.E.2d 819 (1980).  A trial court has the discretion to dismiss a petition for post-conviction relief without any response from the state.  *See State v. Peterson*, 7th Dist. No. 08 MA 102, 2009-Ohio-1504, ¶ 10, 14 (where the untimely petition failed to set forth any substantive ground upon which relief can be granted, trial court could dismiss without waiting for petitioner's response to state's summary judgment motion); *In re J.B.*, 12th

---

[2] Appellant asks us to apply the holding in the Fifth District's *Riley* case regarding findings and conclusions.  However, that case involved a timely petition. *See State v. Riley*, 5th Dist. No. 2007 CA 00279, 2008-Ohio-3125, ¶ 3, 5, 15-16.

Dist. No. CA2005-06-176, 2006-Ohio-2715, ¶ 48 ("A trial court is not required to consider the state's answer, if any, before ruling on the petition."). Contrary to Appellant's suggestion, an evidentiary hearing was not required merely because the state did not respond.

**{¶11}** In discussing the exceptions for an untimely petition, Appellant first claims his attorneys (trial counsel and appellate counsel) failed to advise him of the remedy of a petition for postconviction relief and thus failed to advise him of the time deadlines for filing a timely petition. Initially, we note the awkward terminology of Appellant's affidavit submitted in support of the petition; at paragraph 9, he said he had no knowledge he could address issues that were off the record until he was advised by a "Jail house Lawyer" and clerks at the prison law library. The affidavit did not specifically attest his attorneys failed to advise him of postconviction relief or its deadlines. Notably, Appellant also attached to his petition a 2009 letter he received from the Ohio Supreme Court which mentioned postconviction relief. Furthermore, he filed a motion for transcripts in the trial court in August 2009, wherein he argued: the right to transcripts applies in state postconviction proceedings; he was not required to have a postconviction petition pending to assert this right; he needed the transcripts to file such a petition; and his receipt of the transcripts was the first step in the postconviction process.

**{¶12}** In any event, the general failure of counsel (appointed for trial or direct appeal) to advise a defendant of postconviction procedures does not equate to being "unavoidably prevented from discovering the facts upon which he must rely to present the claim for relief." *See* R.C. 2953.23(A)(1)(a). The statute speaks of being unavoidably prevented from discovering facts, not the law. A petitioner's assertion that he was not informed of the procedural mechanism of postconviction relief is essentially an argument for the creation of an additional exception to the statutory deadlines. *See State v. Theisler*, 11th Dist. No. 2009-T-0003, 2009-Ohio-6862, ¶ 18-21. "Merely because counsel failed to advise him of the deadline for filing a petition does not show he was 'unavoidably prevented' from discovering the deadline on his

own or from other sources. Ignorance of the law as to the time for filing is no excuse." *State v. Halliwell*, 134 Ohio App.3d 730, 735, 732 N.E.2d 405 (8th Dist.1999). Accordingly, Appellant's alleged state of being unaware of the law on postconviction relief does not satisfy an exception to the statute's timeliness requirements. *See State v. Wolff*, 7th Dist. No. 10-MA-184, 2012-Ohio-5575, ¶ 16.

**{¶13}** We recognize the Sixth Circuit reversed a district court's dismissal of a habeas action because the defendant's attorney failed to advise him of state postconviction deadlines where the attorney knew of a postconviction issue. *Gunner v. Welch*, 749 F.3d 511, 520 (6th Cir.2014). However, this was a federal habeas decision, not a decision on a state postconviction petition. *See State v. Guy*, 6th Dist. No. S-15-019, 2016-Ohio-619, ¶ 14. In fact, the decision concerned the effect of the habeas petitioner's failure to file for state postconviction relief with a conclusion that a state postconviction petition would be futile due to the filing deadlines. *Gunner*, 749 F.3d at 516, 520 (a federal habeas petitioner must show cause why he failed to file a state postconviction petition).

**{¶14}** The foregoing arguments in Appellant's first assignment of error are without merit. This leaves Appellant's main argument addressed in both his first and second assignments of error: due to ineffective assistance of counsel he was unavoidably prevented from discovering the third plea offer which would have avoided the trial and the resulting aggravated murder conviction.

UNCONVEYED PLEA OFFER

**{¶15}** The remainder of Appellant's first assignment of error and his second assignment of error are related and provide respectively:

"The Trial Court abused it[s] discretion when it Dismissed the Appellant's Post-Conviction Relief, w[h]ere Appointed Counsel prevented his client from discovering the facts about a Third (3rd) Plea Offer of Eight (8) years that changed the outcome of the Proceedings, and prevented the appellate from serving a lesser penalty in violation of the State and Federal Constitutions."

"Counsel was Substantially unreasonable and Ineffective in his assistance to

the prejudice of the Appellant."

{¶16} Appellant reviews the United States Supreme Court's *Lafler* and *Frye* decisions which were decided on the same day. A defendant is entitled to the effective assistance of competent counsel during the plea bargaining process and in deciding whether to accept an offered plea. *Lafler v. Cooper*, 556 U.S. 156, 162, 168, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). As a result, the two-part *Strickland* test applies, requiring a showing of deficient performance and prejudice on advising whether to accept plea. *Id.* at 162-163, applying *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Lafler*, the defendant claimed his attorney advised him to reject a plea offer and provided incorrect legal advice on a lack of intent where the victim was shot below the waist. This rejected plea offer involved dismissing some charges and recommending a sentence of 51-85 months. The defendant was convicted at trial and sentenced to a mandatory minimum sentence of 185 to 360 months in prison. The defendant thereafter sought federal habeas relief. The United States Supreme Court pointed out an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance but the Court was not addressing the deficiency prong because the parties conceded the attorney rendered deficient performance in advising the defendant. *Lafler*, 556 U.S. at 174.

{¶17} The Court therefore addressed only the prejudice prong and concluded a defendant must show that but for the ineffective advice of counsel there is a reasonable probability: (1) the plea offer would have been presented to the court (meaning the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) the conviction, sentence, or both would have been less severe than that imposed upon the defendant. *Id.* at 164 (rejecting the state's contention that "there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial."). The Court then implemented a remedy of ordering the state to reoffer the plea, the defendant's

acceptance of which would still allow the trial court to exercise its discretion in deciding whether to accept the plea, partly accept the plea, or maintain the original conviction and sentence. *Id.* at 174-175. *See also id.* at 171-172 (the court can consider information learned about the crime after the plea offer).

{¶18} In the *Frye* case, the prosecutor sent the defendant's attorney a letter offering two possible plea bargains; one would reduce the felony charge to a misdemeanor and recommend a sentence of 90 days in jail. The attorney did not convey the offers to the defendant, they expired, he was arrested again, he pled guilty with no underlying agreement, and he was sentenced to three years in prison. The defendant sought postconviction relief in state court, alleging his counsel rendered ineffective assistance by failing to inform him of the plea offers. He testified at an evidentiary hearing that he would have pled guilty to the misdemeanor if he knew of the offer. The trial court denied the motion, but a state appellate court found deficient performance and prejudice and reversed for plea withdrawal.

{¶19} After granting certiorari, the United States Supreme Court began by observing: "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. 134, 143, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). The Court found it unnecessary to define the responsibilities of defense counsel in the plea bargaining process, while acknowledging: "The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision." *Id.* at 144-145, quoting *Premo v. Moore*, 562 U.S. 115, 125, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011). Plea bargaining depends on "personal style" with such individual negotiation tactics that "it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Frye*, 566 U.S. at 145.

**{¶20}** The Court found the narrow issue was "whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both." *Id.* The Court held "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date." *Id.* It was therefore concluded counsel's performance was deficient by allowing the offer to expire without advising the defendant of the offer. *Id.* at 145-146.

**{¶21}** To demonstrate prejudice from this type of deficient performance, a defendant must show a reasonable probability that: (1) he would have accepted the earlier plea offer; (2) the plea would have been entered without the prosecution canceling the offer or the trial court refusing to accept the plea; and (3) the end result would have been more favorable due to a lesser charge or a shorter sentence. *Id.* at 147. The Court remanded to the state court for consideration of the second element, instructing: "If, as the Missouri court stated here, the prosecutor could have canceled the plea agreement, and if Frye fails to show a reasonable probability the prosecutor would have adhered to the agreement, there is no *Strickland* prejudice. Likewise, if the trial court could have refused to accept the plea agreement, and if Frye fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice." *Id.* at 151 (noting there was reason to doubt the prosecution would have adhered to the agreement or the trial court would have accepted it because of a new arrest).

**{¶22}** Appellant states there was an unconveyed plea offer of eight years; his counsel violated his duty by failing to communicate it to him before trial; he would have accepted the deal; and he would have be sentenced to eight years instead of 30 years to life for aggravated murder. (He does not mention the five-year consecutive firearm specification.) Appellant's affidavit states counsel conveyed two plea offers to him: the first offer was 25 years to life; and the subsequent offer, about

a month later, was 15 years to life. (He does not mention what offense was involved in the offers, but we note 15 years to life would apply to the lesser included offense of murder, which does not require prior calculation and design.)

**{¶23}** Appellant said the conveyance of these offers made him believe counsel had "turned against" him because counsel previously supported his theory that he was under the heat of passion after being subjected to gunfire and having to return past the location of the gunfire. Appellant then asked for new counsel. Disregarding that it is the court who decides whether counsel would be replaced, Appellant said he gave counsel a second chance after his attorney reassured him about his theory of the case. Appellant was not unavoidably prevented from raising issues regarding the advice of counsel as to these two plea offers or the theory of the case. He therefore focuses on his allegations of a third plea offer.

**{¶24}** Appellant submitted the February 28, 2017 affidavit of his co-defendant, which confirmed the receipt of plea offers for 25 years to life and 15 years to life. The co-defendant's affidavit then stated: his attorney advised him of an offer of 8 years if he testified against Appellant and said Appellant "was the brains of the operation and did this purposely"; his attorney told him the deal was sent to Appellant as well; and his attorney believed it would "come down to which one will take the deal first, you or him." The co-defendant said he rejected the offer, signed a time waiver, waited until after Appellant's trial, and accepted a new offer of 9 years for manslaughter plus three years for the firearm specification.

**{¶25}** Appellant's affidavit attests he would have taken the third plea offer as he believed he should only have been charged with manslaughter and the recommended sentence was better than the maximum sentence for manslaughter. Although he does not specifically say so, this means he is asserting he would have testified against his cousin. He believes his attorney did not advise him of the third offer because he was "still holding a grudge for trying to have [him] fired off my case!" Appellant's affidavit states he did not learn about the third offer until his co-defendant told him about it on February 20, 2017. Appellant urges he was unavoidably

prevented from discovering the third offer because his attorney failed to convey it to him at any time.[3] He concludes the trial court should have conducted an evidentiary hearing.

**{¶26}** "In postconviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51. The trial court's decision on whether to grant a hearing is discretionary and reviewed for an abuse of discretion. *Id.* at 51-52, citing *State v. Calhoun*, 86 Ohio St.3d 279, 286, 714 N.E.2d 905. A petitioner filing for postconviction relief is not automatically entitled to a hearing as the statute specified the trial court shall determine whether there are substantive grounds for relief before granting an evidentiary hearing on the petition. *Calhoun*, 86 Ohio St.3d at 283, citing R.C. 2953.21. Before a hearing can be granted on ineffective assistance of counsel occurring outside of the record, "the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *See id.*, quoting *State v. Jackson*, 64 Ohio St.2d 107, 112, 413 N.E.2d 819 (1980).

**{¶27}** In *Calhoun*, the court of appeals reversed and remanded a trial court's denial of a timely postconviction petition without a hearing; the appellate court assumed the affidavits presented in support of a petition must be accepted as true and any conflicts in the affidavits submitted by the petitioner should not be resolved

---

[3] Appellant did not argue the statutory untimeliness alternative to being unavoidably prevented from discovering the facts upon which the petition was based. The alternative on the first-prong for an untimely petition requires a petitioner to show: "after the time expired, the United States Supreme Court recognized a new federal or state right that applies retroactively to his situation and the petition asserts a claim based on that right * * *." R.C. 2953.23(A)(1)(a). As *Frye* pointed out, *Strickland* was already applied to the plea bargaining process in the 1985 *Hill* case. *Frye*, 566 U.S. at 140 ("*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland"), citing *Hill*, 474 U.S. at 57. *See also id.* at 148 ("This application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill*."). Various appellate court have concluded the *Frye* and *Lafler* cases did not create a new retroactive right for purposes of post-conviction relief. *See, e.g., State v. Burton*, 4th Dist. No. 13CA12, 2014-Ohio-2549, ¶ 15 (citing cases from the Second, Tenth, and Eleventh Districts); *State v. Thomas*, 8th Dist. No. 99972, 2014-Ohio-1512, ¶ 9-10. In any event, the *Frye* and *Lafler* cases were released in March 2012, and Appellant's petition was filed in June 2017.

without a hearing. The Ohio Supreme Court rejected both of these assumptions. *Calhoun*, 86 Ohio St.3d at 284. The Court held "a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact." *Id.* ("To hold otherwise would require a hearing for every postconviction relief petition"). Although noting an affidavit should not lightly be deemed false, the Supreme Court concluded a trial court ruling on a postconviction relief petition "may deem affidavit testimony to lack credibility without first observing or examining the affiant." *Id.* (relying on "common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice").

{¶28} In assessing the credibility of affidavits, the trial court should consider all relevant factors, including but not limited to the following: (1) whether the judge reviewing the postconviction relief petition also presided at the trial; (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person; (3) whether the affidavits contain or rely on hearsay; (4) whether the affiants are relatives of the petitioner or otherwise interested in petitioner's success; and (5) whether the affidavits contradict evidence proffered by the defense or by the same witness at trial or are internally inconsistent. *Id.* at 285. "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.*

{¶29} Appellant acknowledged this law in his petition and asked the trial court to apply the *Calhoun* factors in his favor. As to these factors: (1) the judge reviewing the petition was not the same judge who presided at the trial, which was held 9.5 years earlier; (2) Appellant's affidavit and the co-defendant's affidavit do not contain similar language or otherwise appear to drafted by the same person; (3) issues of hearsay are apparent; (4) the affiant is the co-defendant and Appellant's cousin; and (5) Appellant's affidavit suggests he was not the shooter, while evidence presented

by the defense at trial included a statement that the co-defendant was the driver, and Appellant's affidavit states he was defending his life from attack by the victims but then differentiates "Shooter Chuck" from the victim.

**{¶30}** More specifically as to the third factor, Appellant's affidavit states his attorney failed to convey a third plea offer to him at any time. In describing the source of knowledge for the third offer, Appellant's affidavit stated: the co-defendant told him about the offer; the co-defendant's attorney told the co-defendant about the offer; an unnamed prosecutor told the co-defendant's attorney about the offer; and the prosecutor told the co-defendant's attorney (who told his client, who told Appellant 9 years later) that the prosecutor told Appellant's counsel about the offer. One layer of hearsay is eliminated by Appellant's submission of the co-defendant's affidavit. However, the co-defendant is still stating what his attorney told him which was based on what an unnamed prosecutor told the attorney (about what the prosecutor told another attorney). *See Calhoun*, 86 Ohio St.3d at 287 ("defendant's supporting affidavits from himself and his mother are based on out-of-court statements allegedly made by defendant's trial counsel").

**{¶31}** Furthermore, the *Frye* Court remanded to the state appellate court to consider whether the prosecutor would have withdrawn the plea offer or the trial court would have rejected it (and the Court suggested there were indications the plea would not have remained available). Here, there were statements from multiple witnesses that Appellant was the front seat passenger and the shooter (and the codefendant was the driver). We also point out there is no indication the alleged offer was a "formal offer" as was the limited situation in the *Frye* case, and it allegedly involved a race between the co-defendants to see if they would agree to testify against each other. The prosecutor may have been employing a negotiation tactic in bargaining with the co-defendant and may not have conveyed an additional offer to Appellant's attorney. Any mention of Appellant may have been an incentivizing strategy.

**{¶32}** As to the fourth factor, the key affidavit was written by a co-defendant

who was jointly indicted for aggravated murder, and who said he was offered another deal after Appellant's trial. (He said he received 9 years for manslaughter plus three years for a gun specification). He had nothing to lose by assisting Appellant as he had already been convicted. In addition, he was Appellant's cousin. We also note a notary certifies the person coming before the notary acknowledged he signed the instrument and provided evidence he was the person whose name was signed. *Kight v. Miller*, 7th Dist. No. 16 MA 0079, 2017-Ohio-5714, ¶ 44, citing R.C. 147.53 (the person taking an acknowledgment shall certify that the person acknowledging appeared before him and acknowledged he executed the instrument and the person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument). An affidavit is "by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury * * *." *Calhoun*, 86 Ohio St.3d at 284. Although Appellant's affidavit states that he swears the contents are true under penalty of perjury, there is no similar statement in the co-defendant's affidavit.

**{¶33}** Additionally, this was an untimely filed petition. Appellant states he learned of the third plea offer from the co-defendant on February 20, 2017. His burden was to show he was unavoidably prevented from discovering the facts upon which his petition relies, which is more than simply showing he was unaware of a fact. "Unavoidably prevented from discovering" typically means the defendant was unaware of the facts upon which the petition was based and he was unable to discover them through reasonable diligence. *See, e.g., State v. Burton*, 9th Dist. No. 28359, 2017-Ohio-7588, ¶ 9. Appellant does not explain why he could not or did not learn of his cousin's story about the third plea offer until more than 9 years after the offer was made. In fact, his cousin's affidavit does not mention when he told Appellant about the offer. Furthermore, Appellant waited until June 2, 2017 to file the petition.

**{¶34}** We conclude the trial court properly exercised its discretion in

determining the allegations in the untimely petition and the affidavits submitted in support were unworthy of an evidentiary hearing.   Appellant's first and second assignments of error are overruled.

<u>SUBJECT MATTER JURISDICTION</u>

**{¶35}**  Appellant's third assignment of error contends:

"The trial court had no Probable Cause and/or Subject Matter Jurisdiction of the charging instruments from the police reports to the Indictment, where the prosecutor filed a Notice of Correction to the original Police Report."

**{¶36}**  Appellant's petition for postconviction relief complained about a Notice of Correction filed by the state on November 23, 2007, which he stated changed a police report on a backseat passenger's statement as to who was the driver and who was the shooter.  In his affidavit submitted with the postconviction petition, Appellant complained his attorney characterized this issue with the police report as a clerical mistake.   In his postconviction petition, Appellant reasoned the police report could not be amended as it was the source of the affidavit and complaint and the complaint was the source of the indictment.  On appeal, he reiterates these arguments and concludes the indictment was void.

**{¶37}**  Appellant's arguments do not meet the requirements for filing an untimely postconviction petition.  He does not rely on a new retroactive right, and there is no indication he was unavoidably prevented from discovering the facts he relies upon in addressing this perceived issue with contradicting records.  *See* R.C. 2953.23(A)(1)(a).  He admits the issue was known to him before trial but was not raised.  To the extent Appellant's arguments rely on issues in the record and items which could have been raised to the trial court before trial or on direct appeal, the state asserts the doctrine of res judicata.

**{¶38}**  Pursuant to the res judicata doctrine, "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that

judgment of conviction or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for postconviction relief." *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), syllabus.

{¶39} In an apparent attempt to avoid the res judicata bar or the time requirements for postconviction relief, Appellant's petition asserted this was a matter of subject matter jurisdiction, resulting in a void judgment. A judgment rendered by a court lacking subject matter jurisdiction is void ab initio, and courts have inherent authority to vacate a void judgment. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph three and four of syllabus. *See also State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995) (general division lacked subject matter jurisdiction to convict a juvenile offender were there was no transfer from the juvenile court). When a judgment is void ab initio, the issue can be raised at any time. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 17, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11; *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 44. Accordingly, the doctrine of res judicata does not bar a claim that a judgment is void for lack of subject matter jurisdiction. *See Kuchta*, 141 Ohio St.3d 75 at ¶ 17; *Wilson*, 73 Ohio St.3d at 44-45, fn. 6 (lacking subject matter jurisdiction could not be defeated by arguments of res judicata, waiver, or lack of prejudice); *Perry*, 10 Ohio St.2d at 178-79 ("where a judgment of conviction is rendered by a court having jurisdiction over the person of the defendant and jurisdiction of the subject matter, such judgment is not void, and the cause of action merged therein becomes res judicata as between the state and the defendant").

{¶40} Appellant's arguments fail for various reasons. Appellant was not bound over on the complaint. Rather, he was indicted by direct presentment.

Contrary to his contention, the earlier reports used for prior filings were not "building blocks" alteration of which would cause the indictment to fall. Appellant also assumes the grand jury based its indictment on a police report, but there is no support for this assumption. *See State v. Nields*, 93 Ohio St.3d 6, 19, 752 N.E.2d 859 (2001) ("the record does not reflect what evidence was presented before the grand jury; hence, whether the indictment was based on 'inadequately presented evidence' cannot be evaluated"). Appellant states the police report transposed his position in the vehicle with the position of Jason Clay, and was thereafter corrected. It appears the uncorrected version, which Appellant believes was provided to the grand jury, would have favored Appellant. Appellant's petition conceded the original police report contained a statement contradicting the recorded statements, which he watched on DVD prior to trial; one of those DVDs was a trial exhibit.

{¶41} Notably, Appellant Jonathan Clay was jointly indicted with his cousin, Jason Clay. A person who is complicit in the commission of an offense shall be prosecuted and punished as if he were a principal offender. R.C. 2923.03(F). A charge of complicity may be stated in terms of the complicity statute or in terms of the principal offense. *Id.* In addition, Appellant states the notice of correction changed a police report. The indictment was not amended. Contrary to Appellant's suggestion, there was no constructive amendment of the indictment. Furthermore, "an accused cannot attack an indictment valid on its face on the ground that the grand jury lacked sufficient credible evidence to indict." *Nields*, 93 Ohio St.3d 6,

{¶42} Subject matter jurisdiction is "the power of a court to entertain and adjudicate a particular class of cases." *Kuchta*, 141 Ohio St.3d 75 at ¶ 19 (a mere error in the invocation or exercise of jurisdiction over a particular case can cause a judgment to be voidable, but it does not cause the judgment to be void). "[T]he court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.'" *Id.* at ¶ 20. Appellant's allegations regarding a corrected police report and assumptions about the evidence presented to the grand jury do not involve subject matter jurisdiction.

*See generally id.; In re Bryant*, 171 Ohio St. 16, 167 N.E.2d 500 (1960). Appellant's third assignment of error is overruled.

LACK OF PEREMPTORY CHALLENGE IN VOIR DIRE

**{¶43}** Appellant's fourth assignment of error alleges:

"Counsel was ineffective when he failed to peremptor[il]y challenge and object to the bias prejudice of a Female Juror."

**{¶44}** Appellant contends his attorney should have challenged a prospective juror who said her brother had been killed and who voiced concern at voir dire over whether it would be fair for her to sit on the jury. (Tr. 38). As aforementioned, res judicata bars a defendant from seeking postconviction relief on any matter he could have raised on direct appeal. *Cole*, 2 Ohio St.3d 112 at syllabus. *See also State v. Reynolds,* 79 Ohio St.3d 158, 679 N.E.2d 1131 (1997); *Perry*, 10 Ohio St.2d at 180. Voir dire occurred on the record. Appellant suggests he was unaware of the right to challenge a juror. However, the transcript shows the exercise of multiple challenges for cause and peremptory challenges by both sides. It also reflects the questioning of this prospective juror (and her assurances she could be fair and follow the court's instructions). (Tr. 37-40, 104-105, 131-132).

**{¶45}** Accordingly, the issue with voir dire Appellant presented in his petition could have been raised in the direct appeal and is now barred by res judicata. *See id. See also State v. Jackson*, 10th Dist. No. 01AP-808, 2002-Ohio-3330, ¶ 51 ("The trial court did not abuse its discretion when it overruled, without a hearing, appellant's first ground for postconviction relief, in which appellant argued that his trial counsel failed to adequately question prospective jurors during voir dire concerning their views about race."). We note Appellant's affidavit alleges counsel told him to let him do his job when he expressed concern over this prospective juror. However, the mere addition of counsel's comments de hors the record will not change the fact that the reasons supporting a challenge were contained in the record.

**{¶46}** In addition, Appellant's petition was untimely. He was not unavoidably prevented from discovering the facts upon which this portion of the petition was

based and no new rights to challenges in voir dire was suggested. *See* R.C. 2953.23(A)(1)(a). (We note the same res judicata and untimeliness analyses would apply to other contentions mentioned in his petition but not briefed on appeal, such as a failure to test a hat for DNA, which was mentioned in defense counsel's closing argument.)

**{¶47}** Regardless and most notably, Appellant's argument (that defense counsel was ineffective by failing to challenge this juror due to bias) is wholly unsupported by the transcript. The state exercised a peremptory challenge as to this juror; she did not sit on the jury. (Tr. 199). Accordingly, this argument has absolutely no basis in law or fact. Appellant's fourth assignment of error is overruled.

**{¶48}** The trial court's judgment is hereby affirmed.


Donofrio, J., concurs.

Waite, J., concurs.