**CITY OF TOLEDO, Appellee,**

v.

**SCHMIEDEBUSCH et al., Appellants.   (Two Cases.)**

[Cite as *Toledo v. Schmiedebusch*, 192 Ohio App.3d 402, 2011-Ohio-284.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–09–1290 and L–09–1291.

Decided Jan. 21, 2011.

Adam Loukx, Toledo Director of Law, David L. Toska, Chief Prosecuting Attorney, and Joseph Howe, Assistant Prosecuting Attorney, for appellee.

George R. Royer, for appellants.

COSME, Judge.

{¶ 1} Defendants-appellants, Teresa Schmiedebusch and Steven Schmiedebusch, were jointly tried and convicted by a jury on one count of failure to obey an order to abate a public nuisance in violation of Toledo Municipal Code 1726.08(a), a misdemeanor of the third degree. Appellants were each sentenced by the Toledo Municipal Court to a term of 60 days suspended upon certain conditions. Appellants now challenge their convictions and sentences on various evidentiary and procedural grounds. Because we find that appellants' convictions and sentences were supported by sufficient evidence and free of any prejudicial error, we affirm the judgments of the Toledo Municipal Court.

## I. BACKGROUND

{¶ 2} In August 2008, appellants, who reside in Ottawa, Ohio, purchased two contiguous properties with rearward borders in the Old West End section of Toledo, Ohio, one at 2057 Glenwood Avenue and one at 2104 Maplewood Avenue. By all accounts, the houses on both properties needed substantial repairs and the Maplewood house in particular was structurally unsound.

{¶ 3} On October 6, 2008, appellee, city of Toledo, purportedly mailed a "Determination of a Public Nuisance" notice to appellants in regard to the

Maplewood property, ordering them to make certain listed repairs or demolish the premises within 30 days after service of the notice. Specifically, the notice provided:

{¶ 4} "You are hereby notified pursuant to Section 1726.03 of the Toledo Municipal Code, that the Commissioner of The Building Inspection and Code Enforcement Division has declared the above property a public nuisance.

{¶ 5} "YOU ARE HEREBY ORDERED TO: Repair foundation, brick side-walls, doors, windows, porches, steps/stairs, gutters and spouts; add railing; scrape and paint all exposed wood on house. Rehab or demolish. T.M.C. 1726.01(a).

{¶ 6} "Unless you cause the abatement of this public nuisance within thirty (30) days after service of this notice you are in violation of Toledo Municipal Code 1726.08. * * * In addition, the public nuisance may be abated at your expense, including demolition of the structure, by the City of Toledo.

{¶ 7} " * * *

{¶ 8} "You may, within ten (10) business days from the date of this notice/order or no later than 24 hours from the date received, make an in-person request to the Supervisor–Enforcement Support Staff, for a hearing on the question of whether a public nuisance as defined in section 1726.01(a) exists."

{¶ 9} On April 1, 2009, appellee filed separate housing complaints in the Toledo Municipal Court against Teresa Schmiedebusch (No. CRB–09–05820) and Steven Schmiedebusch (No. CRB–09–05818), charging each with one count of failing or neglecting to obey or abide with an order to abate a public nuisance in violation of Toledo Municipal Code 1726.08(a). The complaints alleged that appellants were "issued orders on 10/6/2008 to Repair * * * or demolish at 2104 Maplewood Ave but failed or neglected to obey or abide with said order within the 30 days granted in the order."

{¶ 10} Appellants entered pleas of not guilty to the charges, and the matter proceeded to joint trial by jury of both appellants on September 10, 2009. Appellee presented testimony from Denise Guile, the city's general inspector, and Stephanie Rand, an intermediate clerk with the Department of Neighborhoods. Guile testified about the condition of the premises, the determination of nuisance, and appellants' failure to comply with the abatement order. Rand testified that she personally prepared the notice of public nuisance and abatement order and obtained appellants' address and ownership status from the real estate records on file with the Lucas County auditor. She explained that pursuant to department procedure, she printed out both the notice and the envelope in which it was mailed, put the letter in the envelope, and then put the letter and envelope out for postage and mailing. She also stated that the mail is collected and taken to

the mail room every day at 2:30 p.m., that the notice to appellants was sent by regular U.S. mail, and that the mail was never returned as having not been received by them.

{¶ 11} At the close of appellee's case, appellants moved for a judgment of acquittal on grounds that "there is not adequate proof that [the notice] was delivered to and received by the defendants in this case." The trial court denied the motion, finding that the testimony of Rand was sufficient to establish compliance with the notice provisions of Toledo Municipal Code 1726.03(b)(1).

{¶ 12} During their case, appellants did not dispute that the house on Maplewood was in poor condition or unsuitable for occupancy. Instead, appellants testified that they purchased the property with the intent to demolish the house. Their plan was to first renovate the Glenwood house for their daughter's use while she attended the University of Toledo and to then demolish the Maplewood house and use that property as a driveway or parking garage in conjunction with the Glenwood property. Meanwhile, appellants boarded up the Maplewood house, cleaned the debris from the premises, maintained the landscaping, and posted no-trespassing signs.

{¶ 13} Appellants further testified that they never received the notice of nuisance and order of abatement allegedly sent by the city on October 6, 2008, and that their failure to have repaired or demolished the Maplewood house by the time of trial was due to a combination of health problems experienced by Steven Schmiedebusch and their counsel's advice to preserve the house as evidence during the pendency of the trial proceedings. Appellants also sought to introduce character testimony, but the trial court sustained the city's objection to the admission of such evidence.

{¶ 14} On September 11, 2009, the jury rendered separate verdicts finding each appellant guilty on one count of failure to abate a public nuisance as charged in the complaint. In each case, the trial court entered separate judgments in regard to the finding of guilt and the imposition of sentence, and appellants filed their individual appeals from the latter judgments. On December 1, 2009, this court sua sponte remanded the cause to the trial court for the issuance of a new judgment in each case that contains all the elements of a final, appealable order pursuant to *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. On December 10, 2009, the trial court entered a single judgment in each case that indicated a finding of guilt as charged in the complaint and imposed a 60–day suspended sentence upon certain conditions. On December 11, 2009, this court reinstated both cases to its docket and consolidated them under case No. L–09–1290 for purposes of appeal.

{¶ 15} In this consolidated appeal from the trial court's judgments of December 10, 2009, appellants assert seven assignments of error.

## II. GIVING OF NOTICE

{¶ 16} Appellants' first and last assignments of error are expressly based on the same arguments and will therefore be addressed together. In those assignments of error, appellants assert:

{¶ 17} "1. The appellants' motion for judgment of acquittal should have been granted [by] the trial court."

{¶ 18} "7. The appellants did not receive notice of the (order) of the city of Toledo to demolish or repair the subject building (and whatever notice was issued did not reach appellants—or was not issued pursuant to the provisions of Ohio Revised Code Section 715.26.)"

{¶ 19} These alleged errors are ultimately grounded in the following tripartite argument advanced by appellants in regard to sufficiency of service: (1) pursuant to R.C. 715.26(B), notice was required to be given by certified mail, (2) pursuant to Toledo Municipal Code 1726.08(d)(1), notice was required to be given by first-class U.S. mail, and (3) appellants never received the notice purportedly mailed by the city on October 6, 2008.

{¶ 20} We find these contentions fundamentally unavailing. First, appellants' reliance on R.C. 715.26(B) is inapposite. R.C. 715.26(B) allows municipal corporations to remove or repair insecure, unsafe, or structurally defective buildings and to collect its costs, as provided under R.C. 715.261. It further provides that at least 30 days prior to removal or repair, the municipality "shall give notice by certified mail of its intention with respect to such removal or repair * * * to owners of record of such property."

{¶ 21} R.C. 715.26 and 715.261 delineate the right "of a municipal corporation to repair or remove unsafe structures and to collect any costs incurred for the abatement of that public nuisance from the party or parties responsible." *Toledo v. Rumford Properties, Inc.* (Oct. 28, 1988), 6th Dist. No. L–87–340, 1988 WL 114400. The notice required under R.C. 715.26(B) must be given "prior to the removal or repair of the building by a municipality." *Chilton v. Springfield,* 2d Dist. No. 2007 CA 1, 2008-Ohio-486, 2008 WL 344127, ¶ 27. This case, however, does not involve the city's right of removal or repair. In this case, appellants' house on Maplewood was never slated for demolition or repair by the city.

{¶ 22} Second, appellants' reliance on Toledo Municipal Code 1726.08(d)(1) is misplaced. Section 1726.08(d)(1) governs service of a "Notice of Liability," which is not at issue in this case. Appellants claim in this case that the city failed to provide them with a notice of public nuisance and order of abatement. The notice requirements are governed by Toledo Municipal Code 1726.03, which provides:

{¶ 23} "(b) In regular abatement, the owner, as defined by Section 1726.01(b), of the property where a public nuisance exists or is found shall be provided written notice of the public nuisance and an order to abate the nuisance within thirty days from the date of notice.

{¶ 24} "(1) The written notice shall be given to the owner, as defined in Section 1726.01(b):

{¶ 25} "A. In person;

{¶ 26} "B. By U.S. mail to the owner's last known address; or

{¶ 27} "C. By posting notice on the premises which has been determined to be a public nuisance."

{¶ 28} Unlike Toledo Municipal Code 1726.08(d)(1), which specifies that the notice of liability shall be served on the owner "by first-class United States mail," Toledo Municipal Code 1726.03(b)(1)(B) provides that the notice of public nuisance and order to abate shall be given to the owner by U.S. mail without any qualification or restriction as to the type or class of mail to be used. Thus, notice under Toledo Municipal Code 1726.03(b) may be given by ordinary or regular U.S. mail to the owner's last known address.

{¶ 29} Third, we agree with the trial court that the testimony of Stephanie Rand is sufficient to establish that notice was in fact given to appellants in accordance with Toledo Municipal Code 1726.03(b). In so doing, we find it unnecessary to decide whether notice under Toledo Municipal Code 1726.03(b) need only be mailed to or whether it need be actually received by the property owner. In either case, the question of notice remained one of fact for the jury to resolve.

{¶ 30} It has long been established that a letter or other communication properly addressed and deposited in the mail with sufficient postage is presumed to have been delivered to and received by the addressee. *Palte v. United Ohio Ins. Co.*, 3d Dist. No. 4–06–34, 2007-Ohio-2990, 2007 WL 1731603, ¶ 29; *Shade v. Bleser*, 2d Dist. No. 20938, 2005-Ohio-6544, 2005 WL 3358870, ¶ 36–37; *Brown v. Bichara* (Dec. 13, 1982), 5th Dist. No. CA–1632, 1982 WL 5590; *Judge v. Masonic Mut. Benefit Assn.* (1907), 20 Ohio C.D. 133, 10 Ohio C.C.(N.S.) 473. In this regard, proof of mailing can be established with testimony "of one who personally mailed the letter and saw the address and postage on it. * * * Both Ohio and federal courts recognize that proof of a business system of preparing and mailing letters, and compliance with such a custom in the particular instance, is sufficient to establish proof of mailing." *Simpson v. Jefferson Std. Life Ins. Co.* (C.A.6, 1972), 465 F.2d 1320, 1324. See also *Lasky v. Bd. of Review* (Feb. 17, 1983), 8th Dist. No. 45073, 1983 WL 5781 ("affidavit about a routine business

system [of mailing] which was strictly followed creates a rebuttable presumption that it was followed on this specific occasion").

{¶ 31} On the other hand, it is equally well established that both the fact of mailing and the presumption of receipt can be rebutted by some evidence that the letter was not received. Thus, a sworn denial of receipt by the addressee creates a question of fact for the jury as to whether the letter was actually mailed or delivered. Id. at 1323; *Canter v. Christopher* (1992), 80 Ohio App.3d 465, 468–469, 609 N.E.2d 609; *Lasky*.

{¶ 32} In this case, Rand testified that she personally prepared, addressed, and placed the notice into an envelope, that she put it out for postage and mail, and that she was familiar with and followed routine office procedures for the mailing of such notices. It is undisputed that the notice, which was admitted into evidence, contains appellants' correct address. This testimony is sufficient to establish proof of mailing and a rebuttable presumption of due delivery. Appellants' adamant denial of receipt is sufficient to create a factual question as to whether the notice was mailed and properly delivered, but it is not conclusive on those issues.

{¶ 33} Accordingly, appellants' first and seventh assignments of error are not well taken.

### III. CHARACTER TESTIMONY

{¶ 34} In their second assignment of error, appellants maintain:

{¶ 35} "The [trial] court erred in refusing to allow defendants to present character evidence relative to both defendants."

{¶ 36} Appellants argue that the trial court improperly relied on Evid.R. 608 in disallowing evidence of their good character traits. Citing Evid.R. 405(A)(1) and 405(A), appellants broadly aver that "they can adduce character evidence on their own relevant specific character attributes relative to [the] charge or issue at hand (such as in this case)." Appellants enumerate a litany of character traits that have been held pertinent to other offenses but never actually associate any of those traits with the present charge. The only mention in appellants' brief of any character trait in connection with this case occurs at the end of a rather tortuous sentence, which seems to suggest that the trial court excluded testimony of appellants' character for "being very diligent and conscientious in the physical care of the Glenwood and Maplewood properties and other properties."

{¶ 37} In order for appellants to succeed on this assignment of error, they must show that the trial court abused its discretion in excluding the evidence in question and that the error resulted in material prejudice. *State v. Hicks*, 4th

Dist. No. 08CA6, 2009-Ohio-3115, 2009 WL 1830786, ¶ 22. "[W]hen a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial." *Reynolds v. Budzik* (1999), 134 Ohio App.3d 844, 846, 732 N.E.2d 485, fn. 3.

{¶ 38} We agree with appellants that the trial court relied on the wrong evidentiary rule in determining the admissibility of their proposed character evidence. Evid.R. 608 governs the admissibility of evidence in regard to the character of a witness, while Evid.R. 404(A)(1) provides that "[e]vidence of a pertinent trait of character offered by an accused * * * is admissible." Nevertheless, we find this error to be harmless under the circumstances of this case. Specifically, we find that regardless of the specific character trait involved, appellants' proposed character evidence has no significant bearing on the matters for which it was offered.

{¶ 39} Evid.R. 404(A)(1) is essentially a rule of relevancy. *State v. Horsley,* 10th Dist. No. 05AP–350, 2006-Ohio-1208, 2006 WL 648849, ¶ 18. It codifies the long-standing principle that character evidence can be introduced by an accused in a criminal trial, but only when such evidence is pertinent to the crime at issue. See *State v. Jackson* (June 13, 1991), 4th Dist. No. 633, 1991 WL 110221. Case law before and after the promulgation of Evid.R. 404(A)(1) has consistently held that character evidence must bear reference to the nature of the charge or, in other words, be confined to such traits of character that are inconsistent with commission of the alleged offense. See *State v. Ross,* 2d Dist. No. 22958, 2010-Ohio-843, 2010 WL 761323, ¶ 55; *State v. Washington,* 7th Dist. No. 08–MA–5, 2009-Ohio-2893, 2009 WL 1710751, ¶ 28; *Booker v. State* (1929), 33 Ohio App. 338, 341–342, 169 N.E. 588; *State v. Dickerson* (1907), 77 Ohio St. 34, 54, 82 N.E. 969; *Griffin v. State* (1862), 14 Ohio St. 55, 63. At a core level, the rule limits character evidence to "such traits of character that tend to make it improbable [or at least less probable] that [the accused] would, or could have, committed the crime charged." *State v. Hale* (1969), 21 Ohio App.2d 207, 215, 50 O.O.2d 340, 256 N.E.2d 239. See also *State v. Sampson,* 5th Dist. No. 2001CA00206, 2003-Ohio-1692, 2003 WL 1735223, ¶ 26, fn. 5.

{¶ 40} In this case, defense counsel argued to the trial court that evidence of appellants' character, particularly Steven Schmiedebusch's propensity for truthfulness, is pertinent to their efforts "around the [Maplewood] house to make it safer, make it less of a nuisance." However, appellants have never disputed that they failed to abate the nuisance as ordered by the city. To the contrary, appellants admitted that their efforts around the Maplewood house fell short of compliance with the abatement order. Moreover, appellants elicited testimony

from six different witnesses, including themselves, in regard to their care and maintenance of the Maplewood property; none of that evidence was disputed by the city. In their brief to this court, appellants seem to add that character evidence would be relevant to their care of the Glenwood property and other properties. But appellants' efforts in regard to the renovation or restoration of the Glenwood house and their care of other properties have never been at issue in this case, since the trial court ruled such evidence inadmissible. Under these circumstances, we cannot say that the trial court committed prejudicial error in refusing to admit appellants' proposed character evidence.

{¶ 41} Accordingly, appellants' second assignment of error is not well taken.

## IV. EVIDENCE OF NUISANCE

{¶ 42} Appellants' third assignment of error states:

{¶ 43} "There was no evidence to support a finding by the jury to support the issue that the subject property (cited by appellee) was a public nuisance indicated by the court."

{¶ 44} Here, appellants argue that the evidence presented by the city was insufficient to establish that the Maplewood property constituted a public nuisance as defined in the trial court's instructions to the jury. Specifically, appellants maintain that the testimony of the city's general inspector, Denise Guile, in regard to the condition of the Maplewood premises was not adequate proof that a dangerous condition existed on the property.

{¶ 45} We disagree.

{¶ 46} With respect to sufficiency of the evidence, the Supreme Court of Ohio has held:

{¶ 47} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 48} In accordance with the definition of "public nuisance" set forth in Toledo Municipal Code 1726.01(a), the trial court in this case charged the jury as follows:

{¶ 49} "Public nuisance means in addition to that stated in the Property Maintenance Code adopted in Chapter 1367 of the Toledo Building Code, means any fence, wall, shed, deck, house, garage, building, structure or any part of the

aforesaid; or any tree, pole, post, smokestack; or any excavation, hole, pit, basement, cellar, sidewalks, subspace, dock or wharf or landing dock; or any lot, land, yard premises or location which in its entirety, or any part thereof, by reason of the condition in which the same is found or permitted to be or remain, shall endanger the health, safety, life, limb or property, or cause any hurt, harm, inconvenience, discomfort, damage or injury to any one or more individuals in the City of Toledo."

{¶ 50} Guile testified that she is a trained city inspector, that her duties include the inspection and determination of nuisance violations, and that she personally inspected appellants' property on Maplewood and determined that it was a safety concern and a nuisance to the neighborhood. She testified that the property generally "needed foundation work; the support posts; it needed paint; it needed windows replaced; it needed just work done on it," and that she ordered appellants to "repair the foundation, brick sidewalls, the doors, the windows, the porches, steps, gutters and spouts, to add a railing, to scrape and paint all exposed wood on the house, to rehab it or demolish it." She testified in particular that the support post for the upper porch "was really damaged, and I was concerned that the upper porch could slip and fall." She also authenticated photographs showing the condition of the posts supporting the upper porch and explained that those posts were resting precariously on "deteriorated wood" and "crumbling brick."

{¶ 51} Viewing this evidence in a light most favorable to the city, we hold that a rational jury could easily find that the Maplewood property constituted a public nuisance as defined both in the trial court's instructions and Toledo Municipal Code 1726.01(a).

{¶ 52} Accordingly, appellants' third assignment of error is not well taken.

## V. HEALTH–RELATED TESTIMONY

{¶ 53} In their fourth assignment of error, appellants maintain:

{¶ 54} "The court erred in not allowing appellant Steve Schmiedebusch's evidence to the effect that he had [an] injury and health problems in the latter part of 2009 and early 2010 precluding him from completing the preparatory work for demolition purposes on the subject property."

{¶ 55} This assignment of error actually relates to a four-month period that straddled 2008 and 2009, during which Steven Schmiedebusch purportedly suffered from certain health conditions that prevented him from performing or completing the necessary preparatory work for demolition of the Maplewood property. Appellants argue that the trial court "deemed such health evidence irrelevant" and that testimony on this matter "should have been allowed since it

relates to why the property could not have been demolished in early 2010 [sic, 2009], which Defendants planned to do."

{¶ 56} The trial court did not preclude evidence on this issue but merely limited the testimony. Specifically, appellants were allowed to and did in fact testify that Steven Schmiedebusch was disabled and unable to perform any work on the Maplewood property since December 2008. The trial court merely precluded testimony as to the specific medical conditions from which he suffered on grounds that such testimony "would be prejudicial and unfair to the City because that could generate sympathy for him."

{¶ 57} Evid.R. 403(A) provides:

{¶ 58} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 59} In *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, the Supreme Court of Ohio explained:

{¶ 60} "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. * * * The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury."

{¶ 61} In this case, even the *allowed* testimony as to Steven Schmiedebusch's disability is of questionable probative value. The complaints in this case allege that appellants were "issued orders on 10/6/2008 to Repair * * * or demolish at 2104 Maplewood Ave but failed or neglected to obey or abide with said order within the 30 days granted in the order." Appellants testified that Steven's disability began in December 2008, which is beyond the expiration of the 30-day period in the order.

{¶ 62} In any event, assuming the relevance of the allowed testimony in regard to Steven's disability, any further evidence as to the precise nature of his medical condition would provide only minimal reinforcement of the fact that he was medically unable to effectuate preparatory work on the Maplewood property. This is especially so considering that the existence and extent of his disability was never disputed. On the other hand, we agree with the trial court that the proffered testimony presented a substantial danger of unfair prejudice. We hold, therefore, that the trial court did not abuse its discretion in limiting appellant's health-related testimony.

{¶ 63} Accordingly, appellants' fourth assignment of error is not well taken.

## VI. DUE PROCESS

{¶ 64} In their fifth assignment of error, appellants assert:

{¶ 65} "The city of Toledo (appellee) did not provide appellant with a hearing ordering demolition of the real property in question as in this case appellants were not given any prior order notifying appellant of the right to a hearing to determine the necessity and right to demolish the property in issue."

{¶ 66} Appellants maintain in general that the owner of a building must be given "some proper due process consideration before a summary order of demolition can issue." They argue in particular that a property owner must be provided with a hearing on the issue of nuisance "before a city may demolish a building."

{¶ 67} We agree that before a building may be demolished by a municipality on grounds that it constitutes a public nuisance, the owner must be given an opportunity for an administrative hearing and judicial review on the issue of nuisance and, where repairs would be sufficient to abate the nuisance, a statement of the required repairs and a reasonable time in which to accomplish them. *Nucklos v. Bd. of Bldg. Appeals* (Dec. 10, 2001), 5th Dist. No. 2001CA00092, 2001 WL 1606806; *Likover v. Cleveland* (June 1, 1978), 8th Dist. No. 37138, 1978 WL 217869; *Jackson v. Columbus* (1974), 41 Ohio App.2d 90, 93, 96, 70 O.O.2d 92, 322 N.E.2d 283. Appellants' arguments are problematic, however, because the city never issued an order of demolition or commenced demolition proceedings in regard to appellants' house on Maplewood.

{¶ 68} In any event, the abatement order issued in this case clearly gave appellants the option of making specifically enumerated repairs within a reasonable time and expressly provided that appellants may request "a hearing on the question of whether a public nuisance as defined in [Toledo Municipal Code] section 1726.01(a) exists." As to appellants' continued arguments that the order issued in this case was improperly sent by ordinary mail and never delivered, we have already disposed of those matters in our discussion of appellants' first and seventh assignments of error.

{¶ 69} Accordingly, appellants' fifth assignment of error is not well taken.

## VII. SENTENCING

{¶ 70} In their sixth assignment of error, appellants allege:

{¶ 71} "The court erred in sentencing appellant Steve Schmiedebusch (as to both cases CRB–05–1553 and CRB–03–17716) on November 14, 2006 to a term of sixty days (while the co-defendant was given no such sentence)."

{¶ 72} This assignment of error comes perilously close to being incomprehensible. It refers to incorrect case numbers from different years and a sentencing date that does not correspond to the month or year of any of the sentencing orders. We can accept that the incorrect case numbers are the result of a typographical error and assume that appellants are referring to the sentencing orders of October 14, 2009, which were noncompliant with the dictates of *Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. It is somewhat more difficult, however, to ascertain the substance of the alleged error.

{¶ 73} On its face, the assigned error suggests an allegation of sentencing disparity on the basis that Steven Schmiedebusch received a sentence of 60 days in jail, while Teresa Schmiedebusch did not. In their accompanying argument, appellants claim that Steven was sentenced to "a term of sixty days in jail (suspended under circumstances of completion of demolition work)," while Teresa "was sentenced to, but not given, a jail term even though she was a co-owner of the real property and a named co-Defendant." On that basis, appellants maintain that Steven "should not have been given a jail sentence (even though suspended) and probation."

{¶ 74} The sentencing orders of October 14, 2009, however, do not reflect the alleged disparity. In those sentencing orders, Teresa and Steven were each given sentences of 60 days in jail and each of their sentences was suspended on condition that they "bring the property in question into compliance through repairs or demolition." The only disparity in the sentencing orders of October 14, 2009, was that Steven received 18 months of inactive probation, while Teresa was not placed on probation. Since appellants do maintain that Steven should not have received "a jail sentence * * * and probation," it is conceivable that appellants mean to argue that only Steven would face jail time if the nuisance still remained after 18 months. We will, therefore, construe appellants' assignment of error to relate to the sentencing disparity in terms of probation and the possibility of imprisonment for untimely abatement of the nuisance.

{¶ 75} Having reconfigured appellants' sixth assignment of error to comport with the facts, we cannot ignore that it relates to sentencing orders that are not the subject of this appeal. Pursuant to *Baker*, the sentencing orders entered by the trial court on October 14, 2009, were not final, appealable orders. The new resentencing orders of December 10, 2009, constitute the original, final judgment in this case. *State v. Lampkin*, 6th Dist. No. L–09–1270, 2010-Ohio-4934, 2010 WL 3938636, ¶ 2, as modified on reconsideration, 2010-Ohio-5988, 2010 WL 4971075. Those orders, however, do not contain the probation-related disparity that existed in the prior orders. Under the new sentencing orders, Teresa's sentence has been changed. Whether deliberately or inadvertently, the new sentencing order for Teresa provides that she also is "placed on probation for a

period of eighteen (18) months (inactive)." Appellants have not assigned any error in regard to the discrepancy between the two sets of orders or argued that that the change in sentencing required a new sentencing hearing.

{¶ 76} In any event, even if we could read the preexisting probation-related sentencing disparity into the new orders of December 10, 2009, we would not find that the trial court committed any error in that regard. A trial court has full discretion to impose a prison sentence within the statutory range. *State v. Staples*, 12th Dist. No. CA2006–10–259, 2007-Ohio-7072, 2007 WL 4555785, ¶ 22. " 'Where the sentence imposed by the trial court is within the limits prescribed by statute, the court of appeals cannot hold that the trial court abused its discretion by imposing too severe a sentence.' " *State v. Joseph* (1996), 109 Ohio App.3d 880, 882, 673 N.E.2d 241, quoting *State v. Coyle* (1984), 14 Ohio App.3d 185, 14 OBR 203, 470 N.E.2d 457, paragraph two of the syllabus. The 60–day sentence imposed in this case is within the maximum allowable jail term for the present violations. See Toledo Municipal Code 1726.99(a)(1). Besides, considering Steven's admitted experience and expertise in construction work and his predominant role in preparing the Maplewood house for demolition, it appears that the trial court had good reason for ensuring compliance by imposing probation only on him.

{¶ 77} Accordingly, appellants' sixth assignment of error is not well taken.

## VIII. CONCLUSION

{¶ 78} The judgments of the Toledo Municipal Court are affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

*Judgments affirmed.*

PIETRYKOWSKI and SINGER, JJ., concur.