[Cite as *State v. Jury*, 2022-Ohio-4419.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                        Court of Appeals No.  E-22-005

    Appellee                                   Trial Court No.  2013-CR-0472

v.

Brian Jury                                          **DECISION AND JUDGMENT**

    Appellant                                  Decided:  December 9, 2022

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Brian Jury, Pro se.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Brian Jury, appeals the January 20, 2022 judgment of the Erie County Court of Common Pleas construing seven filings that Jury made over the course of three and one-half years as successive petitions for postconviction relief and summarily denying them.  We affirm.

## I. Background

{¶ 2} In 2014, a jury found Jury guilty of two counts of rape, one count of felonious assault, two counts of abduction, and three gun specifications. *State v. Jury*, 6th Dist. Erie No. E-14-100, 2016-Ohio-2663, ¶ 1. We affirmed Jury's convictions and sentences on direct appeal. *Id.* at ¶ 77.

{¶ 3} In 2015, while his direct appeal was pending, Jury filed a petition for postconviction relief. In his petition, he asserted seven claims that boiled down to: (1) the trial court lacked subject matter jurisdiction; (2) his conviction was based on illegally obtained evidence; (3) his trial counsel was ineffective for a variety of reasons, both before and during trial; (4) the state violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to turn over emails and witnesses that could have provided Jury with an alibi; (5) the trial court relied on inaccurate information to justify imposing consecutive sentences; and (6) he was prejudiced by the trial court's failure to sua sponte change the trial's venue due to pretrial publicity. The trial court denied Jury's petition, and Jury did not appeal that decision.

{¶ 4} Beginning in July 2018, Jury filed the seven documents underlying this appeal. Primarily at issue are his "MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO CIV. R. 60(B)" and "MOTION FOR LEAVE TO FILE A 'DELAYED MOTION FOR A NEW TRIAL' UNDER CRIMINAL RULE 33(B)." He also filed (1) a document that he styled a "subpoena" in which he requested that the trial court order the

2.

wireless carriers for his and the victim's phones to provide "cell-site location information" ("CSLI")—data from a cellphone that is maintained by the wireless carrier and that gives time-stamped information regarding the phone's physical location—and text messages; (2) a motion for an emergency injunction to order the wireless carriers to preserve any CSLI and text messages; (3) a request for records that sought three of the sets of cellphone records that the state provided to defense counsel in discovery; (4) a motion to "renew" his Civ.R. 60(B) motion; and (5) a delayed motion for a new trial under Crim.R. 33(A)(6), which alleged that the CSLI data and the text messages—that Jury did not actually have—was newly-discovered evidence.[1]

{¶ 5} In his Civ.R. 60(B) motion for relief from judgment, Jury argued that he was entitled to relief under Civ.R. 60(B)(5) because the state violated *Brady* by failing to provide him with CSLI despite counsel's discovery requests for phone records. Notably, Jury did not allege that the state possessed CSLI for any of the phones; he merely claimed that CSLI "should have been part of * * *" the information requested in the subpoenas or warrants that the state issued to the cellular carriers so that the information that the state received from the carriers included CSLI. Jury claimed that he learned of the existence of CSLI on June 23, 2018, while watching a news story about the United States Supreme

---

[1] The state filed responses to many of Jury's motions, and Jury filed various replies. For the most part, the details of these filings are not germane to the issues before us.

3.

Court's decision in *Carpenter v. United States*, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018). He filed his motion for relief approximately two weeks later.

{¶ 6} In his Crim.R. 33(B) motion for leave to file a delayed motion for new trial, Jury argued that he was unavoidably prevented from discovering CSLI from his phone and the victim's phone on the date of the incidents underlying this case and from discovering the contents of more than 150 text messages between him and the victim (as opposed to the fact of text-message contact between them), despite his counsel's requests before trial for all cellphone records from Jury's and the victim's phone numbers. He argued that the state should have subpoenaed this information from the wireless carriers because the defense had requested "all" cellphone records, but that it failed to do so. He explained the reasons for the delay in filing his Crim.R. 33(B) motion.

{¶ 7} Jury also argued that the result of his trial would have been different if he had access to the CSLI and the text messages. He claimed that the location information would have corroborated his version of events and discredited the victim's version of events. He also alleged that the content of the text messages "would have shown a sex-for-hire relationship—mostly instigated by the alleged victim." Ultimately, Jury believed that "[s]uch physical, undisputable, exculpatory material evidence would have obviated [Jury's] testimony—the only link to the jury's finding [Jury] guilty on (2) two counts of rape [sic]."

4.

{¶ 8} On January 20, 2022, the trial court issued a single judgment entry resolving all of the pending motions. The court found that Jury's filings were "in effect, 'successive petitions for Post Relief Conviction[.] [sic]'" (Footnote omitted.) The court "thoroughly reviewed the stated filings and the record of this case, including the appellate record * * *"—which apparently consisted of our decision in Jury's direct appeal and the Ohio Supreme Court's decision to decline jurisdiction over Jury's appeal from our decision— "as well as the applicable case law" before finding that Jury's "*Motions* are not well-taken, and should be denied." (Emphasis sic and footnote omitted.) Because the trial court construed Jury's filings as successive postconviction relief petitions, it did not issue findings of fact and conclusions of law.

{¶ 9} Jury now appeals, raising three assignments of error:

1) The Trial Court erred when it denied Defendant/Appellant's Civil Rule 60(B) Motion for Relief from Judgment without holding a hearing.

2) The Trial court abused its discretion, and violated Appellant's Due Process rights when it denied Defendant/Appellant's Criminal Rule 33(B) [motion] for leave to File a Delayed Motion for a New Trial based on Newly Discovered Evidence (Crim. R. 33(A)(6)) without a hearing; and, when it denied Appellant a fair mechanism to develop facts to support the motion for leave.

5.

3) Appellant's conviction and sentence is voidable because Appellant was denied his U.S. Constitutional Right(s) of Due Process and a Fair Trial because of prosecutorial misconduct resulting in "Fraud on the Court."

## II. Law and Analysis

### A. The state did not commit *Brady* violations.

{¶ 10} For ease of discussion, before turning to Jury's assignments of error, we will address the overarching theme in Jury's brief: whether the state committed *Brady* violations by failing to subpoena CSLI data and text messages from the cellular providers for Jury's and the victim's cellphones. We find that it did not.

{¶ 11} *Brady* imposes on the government "an obligation to turn over evidence that is both favorable to the defendant and material to guilt or punishment." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 154. In *Brady*, the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. The rule applies to both exculpatory and impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The court has also explained that evidence is material under *Brady* "'if there is a reasonable probability that, had the evidence been disclosed to the defense,

6.

the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting *Bagley* at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley* at 682; *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus.

{¶ 12} A *Brady* violation has three elements: (1) the state suppressed evidence, either willfully or inadvertently; (2) the evidence is favorable to the defendant as either exculpatory or impeachment evidence; and (3) prejudice results to the defendant—i.e., the evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Determining whether the evidence was material "is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." *Id.* at 290. Rather, the relevant question is whether, in the absence of the evidence, the defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence." *Kyles* at 434; *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 40. Thus, *Brady* is violated "when the evidence that was not disclosed 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.*, quoting *Kyles* at 435. The "materiality" of suppressed evidence must be considered collectively, not item by item. *Kyles* at 436. We

7.

review of the materiality of evidence de novo. *State v. Carroll*, 6th Dist. Lucas No. L-05-1362, 2007-Ohio-5313, ¶ 57.

{¶ 13} In this case, the basis for Jury's motion for relief from judgment, motion for leave to file a motion for a new trial, and several of the other motions underlying this appeal is his claim that the prosecution suppressed CSLI data and text messages by refusing to obtain them from the wireless carriers. To be clear: Jury does *not* allege that the prosecutors or another state agent (e.g., the police or a crime lab) actually possess CSLI from his and the victim's phones or the full text messages that Jury and the victim sent to each other. Rather, he claims that the prosecutor knew that CSLI existed, and knew that CSLI and full text messages could be obtained from wireless carriers, yet the state refused to subpoena this information, despite requests from defense counsel for "all" cellphone records of Jury and the victim. Jury has not provided any *proof* that any of this information exists or was available to the state, however, and a *Brady* violation cannot be based wholly on speculation.

{¶ 14} Jury's *Brady* claim falls apart from the beginning. Regarding CSLI, Jury did not actually present the trial court (or this court) with any new facts or evidence relating to his case. Although he speculates that CSLI data for his phone and the victim's phone exists—and that this data would support his version of the facts while simultaneously discrediting the victim and her version of the facts—he does not offer any proof of this beyond a U.S. Supreme Court case that describes, generally and in dicta,

8.

what CSLI is. *See Carpenter*, 138 S.Ct. at 2211-2212, 201 L.Ed.2d 507. But *Carpenter* does not specifically link CSLI to Jury's case or in any substantive way call into question the jury's guilty verdicts on the two counts of rape.[2] Jury does not provide any further information about CSLI that is specific to his case, which could help take his claim beyond pure speculation.

{¶ 15} Mere speculation, without more, is insufficient to support a claimed *Brady* violation. *State v. Sullivan*, 10th Dist. Franklin No. 13AP-861, 2014-Ohio-1260, ¶ 20, citing *State v. Moore*, 10th Dist. Franklin Nos. 11AP-1116 and 11AP-1117, 2013-Ohio-3365, ¶ 43; and *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 60; *see also State v. Bulls*, 9th Dist. Summit No. 27713, 2015-Ohio-5094, ¶ 14 (Trial court properly denied appellant's postconviction relief petition because his affidavit "lists no exculpatory or otherwise favorable evidence that was withheld from him during the trial court proceedings. Rather, it merely claims that such evidence may exist since other cases with different defendants featured a *Brady* violation on the part of the [state]. Such bare facts cannot satisfy the *Brady* standard."). Everything that Jury is claiming about CSLI—from the availability of CSLI data for his and the victim's phones, to the state's

_____

[2] Although Jury's request for relief in his brief is worded more broadly, in his motion for relief from judgment and his later "MOTION TO RENEW" his Civ.R. 60(B) motion, Jury argued only that "[t]he jury could not have returned a guilty verdict on two counts of rape * * *" (and, presumably, the accompanying gun specifications); he did not argue that his felonious assault, abduction, and remaining gun specification convictions should be vacated. Because Jury confined the relief he requested in the trial court to the two rape convictions, we will also confine our review to those convictions.

9.

knowledge of CSLI, to the usefulness of the information for Jury's case—is based on varying degrees of speculation. Without some *evidence*—beyond Jury's hypotheses—that CSLI exists for the phone numbers Jury wants to track and the state did, in fact, know about and suppress the CSLI and text messages, or failed to obtain the information from a state agent who knew about the evidence, Jury cannot prove that the state violated *Brady* by choosing to not subpoena the information.

{¶ 16} Second, regarding the text messages, it appears from the record (and Jury has not provided any evidence to the contrary) that the state provided the defense with all of the information that the prosecutor and his agents had. The record shows that the state disclosed multiple cellphone-related records to the defense, including: (1) "Verizon Wireless phone records from search warrant"; (2) "T-Mobile records"; (3) "Verizon Wireless records"; (4) "DVD of Verizon Wireless phone records"; (5) "CD of search warrant for I-Phone [sic] 4"; (6) "Instructions from Verizon Wireless to view their CD"; and (7) "DVD of search warrant for Motorola phone by Erie County Sheriff's Office." This is all that *Brady* requires. Unless Jury can produce some *evidence* showing that the state possessed other cellphone records, including, perhaps, the text messages he is seeking, he cannot support his *Brady* claim on this point.

{¶ 17} We do not see any evidence in the record to suggest that another agent of the state had the phone records that Jury sought before trial, but that the state failed to obtain them from the agent and provide them to the defense. If that were the case, the

10.

state would be suppressing records in violation of *Brady*, but the state cannot suppress records that it does not have—and that have never been in the possession of a state agent. *State v. McGuire*, 8th Dist. Cuyahoga No. 105732, 2018-Ohio-1390, ¶ 32; *State v. McClurkin*, 10th Dist. Franklin No. 08AP-781, 2009-Ohio-4545, ¶ 57. "The fact that a defendant wishes to have materials that may or may not exist, and may or may not be in the prosecutor's custody or control, does not demonstrate that such materials are *Brady* materials that the prosecutor has a duty to disclose." *McClurkin* at ¶ 57.

{¶ 18} Moreover, Jury's contention that the state should be responsible for obtaining evidence that is potentially useful to the *defense* and that the state does not otherwise have or need does not square with Ohio law. As the Twelfth District recently explained:

> "Ohio law generally recognizes that the state need not gather evidence on the defendant's behalf." *State v. Fornshell*, 1st Dist. Hamilton No. C-180267, 2021-Ohio-674, 2019 WL 11816608, ¶ 10, citing *Kettering v. Baker*, 42 Ohio St.2d 351, 354-355, 328 N.E.2d 805 (1975). While the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a state disclose material evidence favorable to the defendant and prohibits the state from failing to preserve such evidence or destroying such evidence in bad faith; *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Arizona v. Youngblood*, 488 U.S. 51,

109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *the state has no duty to gather exculpatory evidence*. *State Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, 2018 WL 1256540, ¶ 32; *State v. Farris*, 2d Dist. Clark No. 2003 CA 77, 2004-Ohio-5980, 2004 WL 2538830, ¶ 20. The state does not have an obligation "to engage in affirmative action in gathering evidence which an accused might feel necessary to his defense. The accused must protect his own interests." *Baker* at 354, 328 N.E.2d 805. With that in mind, "when the state has failed to gather exculpatory evidence or to fully investigate the allegations, the defendant may either investigate the charge and collect the evidence himself, if such evidence is available, or he may point out the deficiencies in the state's investigation at trial." *Farris* at ¶ 20.

(Emphasis added.) *State v. Young*, 2021-Ohio-2541, 176 N.E.3d 1074, ¶ 103 (12th Dist.). To the extent that the state *does* have a duty to affirmatively gather exculpatory evidence, that duty only extends to "'any favorable evidence known to the others *acting on the government's behalf in the case*.'" (Emphasis added.) *State v. McNeal*, Slip Opinion No. 2022-Ohio-2703, -- N.E.3d --, ¶ 22, quoting *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555, 131 L.Ed.2d 490.

{¶ 19} In short, we disagree with Jury's position that the state should have obtained evidence supporting his case for him. Due process does not require it, and we

12.

will not find that the state violated *Brady* by failing to obtain—on Jury's behalf—evidence held by a third party that was not "'acting on the government's behalf in the case.'" *Id.*

{¶ 20} Finally, a *Brady* violation only occurs when the defendant does not have access to the information that the state suppresses before or during trial. If the defendant knows of essential facts that allow him to take advantage of the information, or has access to the information through another source, the state's failure to disclose does not amount to a constitutional violation under *Brady*. *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 36. Assuming that the state's disclosure of cellular data was defective in some respect, Jury still could not show a *Brady* violation.

{¶ 21} The record contains a subpoena issued by the defense to Jury's wireless carrier for "any and all text messages sent and received by * * *" Jury's phone number for a one-year period beginning the date that the crimes underlying this case occurred. The record does not contain any indication that the wireless carrier failed to honor that subpoena (i.e., by filing a motion to quash or failing to respond). This indicates that defense counsel had Jury's text messages—which would include any messages he sent to and received from the victim—in some form before trial.[3] So, assuming that the state

---

[3] We note that the record before us in this appeal is not the entire record generated in this case—we have the parties' filings since the beginning of the case, the journal entries, the transcript of the jury trial without most of the exhibits, and the transcript of the sentencing hearing. So we cannot say with absolute certainty that Jury's attorney never discussed his subpoena of text messages on the record, but such a discussion is not in the portions of the record we are able to review.

13.

did, in fact, fail to turn over messages, its violation of *Brady* did not rise to the level of violating Jury's due process rights.

{¶ 22} In sum, we find that Jury has not shown that the state violated *Brady* by failing to obtain CSLI data and text messages from the wireless carriers. Jury failed to offer any evidence that the prosecutor or a state agent had this information in their possession, the state was not obligated to obtain the evidence on Jury's behalf, and, assuming some *Brady* violation did occur, the record indicates that Jury's attorney subpoenaed Jury's text messages without objection, which gave him access to the information he wanted to discover by obtaining the victim's text messages to him.

**B. The trial court properly denied Jury's motion for relief from judgment.**

{¶ 23} Turning to Jury's first assignment of error, he argues that the trial court erred by denying his Civ.R. 60(B) motion. He contends that the state deliberately withheld CSLI and text messages, which constituted "fraud on the court(s)" sufficient to justify a hearing on his claim that he is entitled to relief from his rape convictions under the "any other reason justifying relief * * *" provision in Civ.R. 60(B)(5).

{¶ 24} The state responds that the trial court properly construed Jury's Civ.R. 60(B) motion as a postconviction relief petition, and then denied the motion as a successive petition for postconviction relief because Jury did not demonstrate that one of the exceptions in R.C. 2953.23 applied. Because the court properly classified Jury's motion as an unjustified successive petition for postconviction relief, we agree.

**{¶ 25}** As a preliminary matter, we find that the trial court correctly recast Jury's motion for relief from judgment as a petition for postconviction relief. Filing a petition for postconviction relief under R.C. 2953.21 "is the *exclusive* remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case * * *." (Emphasis added.) R.C. 2953.21(K); *see also State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 33 (lead opinion), citing *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12. A trial court can recast a motion filed by a criminal defendant as a petition for postconviction relief if the motion is (1) filed after the defendant's direct appeal, (2) claims a denial of constitutional rights, and (3) seeks to void or vacate the defendant's conviction.[4] *Schlee* at ¶ 12.

**{¶ 26}** Jury's motion for relief from judgment meets the criteria for a postconviction relief petition outlined in *Schlee*: it was filed after Jury's direct appeal, he claimed a denial of his constitutional rights in the form of a *Brady* violation, and he sought "relief from his conviction * * *." Thus, the trial court properly construed it as a

---

[4] We recognize that the Rules of Civil Procedure can apply in criminal cases when "no procedure is specifically prescribed by * * *" the Rules of Criminal Procedure, Crim.R. 57(B), so a Civ.R. 60(B) motion is sometimes appropriate and applicable in criminal cases. *See, e.g., State v. Berk*, 10th Dist. Franklin No. 21AP-121, 2022-Ohio-2297, ¶ 16 (determining that the trial court should not have construed appellant's Civ.R. 60(B) motion as a petition for postconviction relief when he cited Civ.R. 60(B)(1) and (2) as grounds for relief and the motions underlying his request did not claim a denial of constitutional rights or seek to void his conviction). In this case, however, Crim.R. 35 outlines the procedure for postconviction relief petitions, and Jury's purported Civ.R. 60(B) motion falls squarely within the parameters detailed in *Schlee* for construing a motion as a postconviction relief petition, so we need not resort to the civil rules to resolve his claims.

15.

successive petition for postconviction relief. We also note that Jury acknowledged in his motion that "[t]he Ohio Supreme Court has allowed Civ. R. 60(B) Motions to be reconstrued as a post-conviction relief" petition, so he was aware of the possibility that the trial court could treat his motion for relief from judgment as something else.

{¶ 27} This is Jury's second postconviction relief petition. R.C. 2953.23(A) allows a trial court to entertain a successive petition for postconviction relief only under very limited circumstances. One circumstance—which is inapplicable here—involves DNA testing that establishes the defendant's actual innocence. R.C. 2953.23(A)(2). The other circumstance requires the defendant to first show either that (1) he was "unavoidably prevented" from discovering the facts he is relying on to present his claim for relief, or (2) the United States Supreme Court recognized a new right that retroactively applies to him. R.C. 2953.23(A)(1)(a). After proving one of those exceptions, the defendant must also show by clear and convincing evidence that no reasonable factfinder would have found him guilty of the offenses he was convicted of but for the constitutional error at his trial. R.C. 2953.23(A)(1)(b).

{¶ 28} Showing that a defendant was unavoidably prevented from discovering a fact requires "more than simply showing he was unaware of a fact. 'Unavoidably prevented from discovering' typically means the defendant was unaware of the facts upon which the petition was based *and* he was unable to discover them through reasonable

diligence." (Emphasis added.) *State v. Clay*, 2018-Ohio-985, 108 N.E.3d 642, ¶ 33 (7th Dist.).

{¶ 29} When the defendant claims that the state committed a *Brady* violation and suppressed the evidence he is relying on, he is not required to show that he was unable to discover the evidence with reasonable diligence; the prosecution's suppression of the evidence is sufficient to satisfy the "unavoidably prevented" requirement in R.C. 2953.23(A)(1)(a). *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 25. We have already determined that the state did not commit a *Brady* violation in this case, however, so, for the trial court to have jurisdiction to hear his successive petition for postconviction relief, Jury must show that he was unable to discover the existence of the text messages and CSLI specific to his case with reasonable diligence.

{¶ 30} Jury first argues that he was, and continues to be, unavoidably prevented from discovering the CSLI from his and his victim's cellphones because of the state's failure to subpoena the CSLI, despite the prosecutor ostensibly knowing about the existence of CSLI, in general, at the time of Jury's trial, and that Jury only "discovered" the existence of CSLI, in general, approximately two weeks before he filed his motion for relief from judgment. There are several problems with Jury's argument.

{¶ 31} First, as discussed above, Jury did not provide any new facts or evidence relating to his case. Instead, he only speculates about CSLI that may or may not exist.

17.

**{¶ 32}** Further, although Jury contends that he could obtain the CSLI with the court's assistance, a defendant who is not sentenced to death is not entitled to discovery when he files a successive postconviction relief petition. *E.g., State v. Gapen*, 2d Dist. Montgomery No. 28808, 2021-Ohio-3252, ¶ 55 ("R.C. 2953.21, the post-conviction relief statute, does not grant a petitioner the right to conduct discovery."); *State v. Conway*, 10th Dist. Franklin No. 17AP-504, 2019-Ohio-2260, ¶ 39 ("[T]he discovery procedure set forth under R.C. 2953.21(A)(1) only applies to an initial, timely petition for post-conviction relief [filed by a petitioner sentenced to death], and not to a successive petition filed under R.C. 2953.23."); *see also State v. Jordan*, 6th Dist. Lucas No. L-02-1130, 2003-Ohio-5194, ¶ 29, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999); and *State v. Bays*, 2d Dist. Greene No. 2003 CA 4, 2003-Ohio-3234, ¶ 20 (Finding under an earlier version of the postconviction relief statute that "a petitioner receives no more rights than those granted by the statute * * * [and t]he statute does not provide to a trial court the authority to conduct or compel discovery."). Because Jury was not sentenced to death, and this is not a timely, initial postconviction relief petition, Jury is not statutorily entitled to the discovery that he hopes to obtain.

**{¶ 33}** Nor does Jury's ignorance of the existence of CSLI, in general, support his argument that he was unavoidably prevented from discovering the CSLI specific to this case. The crux of Jury's argument is that the state knew that CSLI existed because the prosecutor used CSLI to convict a defendant in an earlier Erie County case, the state

18.

deliberately chose not to subpoena CSLI data because it knew that the data would be damaging to its case, and the state's willful failure to obtain the CSLI from his and the victim's wireless carriers prevented him from "discovering" CSLI until he saw a news story about *Carpenter* in June 2018. Jury's theories are nothing but speculation; he has not presented any actual evidence to support his conjecture aside from a 2012 decision from this court that discusses the Erie County prosecutor's office using CSLI. *See State v. Gipson*, 6th Dist. Erie No. E-10-038, 2012-Ohio-515.

{¶ 34} Similarly, Jury argues that he was, and continues to be, unavoidably prevented from discovering every text between him and the victim because the records that the state had in its possession—which it turned over to the defense—were incomplete. He claims that the state continues to withhold the actual text messages between him and the victim, despite Jury making several discovery requests for all cellphone records from his and the victim's phone numbers. He contends that the state could have requested the messages (and their corresponding CSLI) through subpoenas to the wireless carriers, but failed to do so.

{¶ 35} Again, Jury fails to present any new facts or evidence relating to the text messages. Nor does he offer proof that the state could obtain all of the text messages between him and the victim from the wireless carriers. His primary argument regarding the text messages seems to be that the texts would show that Jury and the victim were involved in a sex-for-hire relationship, which, he claims, the victim primarily initiated.

19.

Jury seems to imply that their sexual interactions the day of the crimes were consensual because of their prior transactional relationship. But, when considered with the other testimony at trial—which included sources other than the victim, who had a host of credibility issues—this is insufficient to exonerate Jury. *See, generally, Jury*, 6th Dist. Erie No. E-14-100, 2016-Ohio-2663.

{¶ 36} Again, it does not appear from Jury's filings or the record that the state, at any point in time, subpoenaed or possessed any text messages beyond those that it turned over to the defense in discovery. Jury has not presented any other evidence to suggest that the state had or has other cellphone records—including text messages—that it did not turn over. And, again, the state is not obligated to gather evidence on Jury's behalf from third parties who are not state agents. *Young*, 2021-Ohio-2541, 176 N.E.3d 1074, at ¶ 103; *see also McClurkin*, 10th Dist. Franklin No. 08AP-781, 2009-Ohio-4545, at ¶ 57.

{¶ 37} Taken together, this all shows that Jury was not unavoidably prevented from discovering the facts underlying his postconviction relief petition. First and foremost, he has not presented any new evidence for us to review. He is merely speculating—without producing any type of proof—that new evidence exists and that the evidence would have changed the result of his trial. Second, Jury has not demonstrated that the state committed *Brady* violations by failing to obtain CSLI and text messages from an entity that is not a state agent or under the state's control. Nor has he shown that he was unavoidably prevented from discovering the information. Although Jury was

20.

clearly unaware of what CSLI was until June 2018, his filings show that he was aware that some of the text messages between him and the victim were not in the records turned over by the state, and nothing indicates that the defense could not have discovered this information through some simple investigation—i.e., reasonable diligence.

{¶ 38} Because Jury has failed to show that the state violated *Brady* or that he could not have discovered the CSLI and texts through reasonable diligence, he cannot show that he was unavoidably prevented from discovering the facts underlying his postconviction relief petition. *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 25; *Clay*, 2018-Ohio-985, 108 N.E.3d 642, at ¶ 33. Thus, the trial court was not able to entertain his successive postconviction relief petition and properly dismissed it. R.C. 2953.23(A).

{¶ 39} Jury's first assignment of error is not well-taken.

## C. The trial court properly denied Jury's motion for leave to file for a new trial.

{¶ 40} In his second assignment of error, Jury argues that the trial court erred by classifying his motion for leave to file a motion for a new trial as a successive petition for postconviction relief and summarily denying it along with the other six motions that Jury filed from July 2018 to January 2022. He contends that, unlike some other motions, a motion under Crim.R. 33(B) cannot be reclassified as a postconviction relief petition and must be considered under the procedures outlined in Crim.R. 33.

21.

**{¶ 41}** The state again responds that the trial court properly construed Jury's Crim.R. 33(B) motion as an unjustified successive petition for postconviction relief.

**{¶ 42}** We agree with Jury that the trial court erroneously considered his motion under Crim.R. 33(B) as a postconviction relief petition. *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 42-47 (a motion filed under Crim.R. 33 is neither a collateral attack on the conviction that is subject to R.C. 2953.21(K), nor the type of motion that is subject to recasting as a petition for postconviction relief). We find that the error was harmless, however, because Jury cannot show by clear and convincing proof that he was unavoidably prevented from discovering the facts underlying his motion within 120 days of his trial. *See Brown v. State*, 2019-Ohio-4376, 147 N.E.3d 1194, ¶ 41 (6th Dist.), citing *Toledo v. Schmiedebusch*, 192 Ohio App.3d 402, 2011-Ohio-284, 949 N.E.2d 504, ¶ 37 (6th Dist.); and *Reynolds v. Budzik*, 134 Ohio App.3d 844, 846, 732 N.E.2d 485 (6th Dist.1999), fn. 3 ("An appellate court cannot reverse a lower court decision that is legally correct even if it is a result of erroneous reasoning. * * * That is, this court will not reverse a trial court decision that 'achieves the right result for the wrong reason, because such an error is not prejudicial.'").

**{¶ 43}** Under Crim.R. 33(A)(6), a defendant may move for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." The motion must be filed within 120 days after the jury renders its verdict. Crim.R. 33(B). A defendant who

22.

fails to file a motion within the 120-day period must seek leave from the trial court to file a delayed motion. *State v. Montgomery*, 6th Dist. Lucas No. L-15-1282, 2016-Ohio-7527, ¶ 43. To be entitled to leave to file a delayed motion for a new trial the defendant must provide "clear and convincing proof" that he was "unavoidably prevented" from discovering the evidence on which his motion is based. Crim.R. 33(B); *State v. Sandoval*, 6th Dist. Sandusky Nos. S-13-032 and S-13-034, 2014-Ohio-4972, ¶ 13.

{¶ 44} Clear and convincing proof is more than "a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 45} The "unavoidably prevented" requirement in Crim.R. 33 mirrors the one in R.C. 2953.23(A)(1). *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, at ¶ 59, citing *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 28. Thus, if a defendant is unavoidably prevented from discovering facts for postconviction relief purposes, he is also unavoidably prevented from discovering them for Crim.R. 33(B) purposes. *See id.* The converse is also true: if a defendant is not unavoidably prevented from discovering facts for postconviction relief purposes, he is also not unavoidably prevented from discovering them for Crim.R. 33(B) purposes. A

23.

defendant satisfies the "unavoidably prevented" requirement by establishing that the prosecution suppressed the evidence the defendant intends to rely on in seeking a new trial. *McNeal*, Slip Opinion No. 2022-Ohio-2703, -- N.E.3d --, at ¶ 17, citing *Bethel* at ¶ 25, 59.

{¶ 46} Generally, we review a trial court's decision on a Crim.R. 33(B) motion for an abuse of discretion. *Id.* at ¶ 13. Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). However, when the defendant alleges a *Brady* violation, we review the trial court's decision de novo. *McNeal* at ¶ 13.

{¶ 47} We have already determined that the state did not commit a *Brady* violation relative to the cellphone records in this case, and, consequently, that Jury was not unavoidably prevented from discovering the CSLI data and text messages for purposes of his postconviction relief petition. Those findings have equal weight for his motion for leave to file a motion for a new trial. *See Bethel* at ¶ 59. Thus, because Jury was not unavoidably prevented from discovering the CSLI data and text messages for purposes of his Crim.R. 33(B) motion, we find that the trial court did not abuse its discretion by denying his motion, although it did so for an incorrect reason. *See Brown*, 2019-Ohio-4376, 147 N.E.3d 1194, at ¶ 41.

24.

**D. Jury has not shown that the state violated his due process rights.**

{¶ 48} In his third assignment of error, Jury largely regurgitates his arguments from his first two assignments of error. He contends that his convictions are voidable because the state failed to obtain the CSLI data and text messages for him. The thrust of his argument here is that the state should have obtained information from the third-party, nongovernmental wireless carriers on his behalf, and its failure to do so deprived him of due process.

{¶ 49} In response, the state reiterates that Jury failed to comply with the postconviction relief requirements in R.C. 2953.23(A) and Crim.R. 33(B), so the trial court properly denied his motions.

{¶ 50} Without belaboring the point, we again stress that the information that Jury wants—if it actually exists—is held by wireless carriers that are not "'acting on the government's behalf'" in this case. *McNeal*, Slip Opinion No. 2022-Ohio-2703, -- N.E.3d --, at ¶ 22, quoting *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555, 131 L.Ed.2d 490. The state's responsibility to obtain and share *Brady* evidence is not triggered unless the evidence is held by the prosecutors themselves or by a person or entity that is working on the state's behalf to help prosecute the case. Jury does not argue that the wireless carriers fall into that category, so there is no evidence before us that the state was responsible for obtaining evidence from the carriers on Jury's behalf.

25.

**{¶ 51}** Because the state did not have a duty to obtain information from the wireless carriers for Jury, its failure to do so did not violate his due process rights. Accordingly, Jury's third assignment of error is not well-taken.

### III. Conclusion

**{¶ 52}** For the foregoing reasons, the January 20, 2022 judgment of the Erie County Court of Common Pleas is affirmed. Jury is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                           _____

Christine E. Mayle, J.                      JUDGE

Myron C. Duhart, P.J.                    _____
CONCUR.

                                                      JUDGE

                                          _____

                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.